**Loeda BLACK, Plaintiff,**

**v.**

**UNITED STATES of America, John Rynd and Connie Rynd, Defendants.**

**Civ. A. No. 87–AR–0428–M.**

United States District Court, N.D. Alabama, M.D.

Oct. 13, 1987.

---

Charles A. McGee, Fort Payne, Ala., for plaintiff.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., Lance J. Wolf, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for U.S.

Roy O. McCord, Gadsden, Ala., for John Rynd and Connie Rynd.

## MEMORANDUM OPINION

ACKER, District Judge.

This is an action to quiet title. The property in question is a tract of land in DeKalb County, Alabama consisting of approxi-

mately 2.75 acres. The case is before the court on stipulated facts. The court adopts these stipulated facts, summarized below, as its findings of fact, subject only to the correction of clerical errors as detailed in note 1.[1] Plaintiff filed a trial brief within the time allowed by the pre-trial order. Defendants have chosen not to file a brief, perhaps because they have no satisfactory answers to the questions here presented. This is called "throwing in the towel."

### Findings of Pertinent Facts

Prior to the transactions with which the court is here concerned, legal title to the property was held by Jimmy Dale Little. On June 2, 1978, Little mortgaged the property to Fred Purdy to secure an obligation of $50,000.00. Subsequently, Little gave a second mortgage on the property to Central Bank of Alabama, N.A., to secure a $100,000.00 loan. Several months later, Little gave a third mortgage on the property to Cordie Thrasher to secure a $150,-000.00 obligation.

In 1984 the State of Alabama sold the property for nonpayment of ad valorem taxes for the 10/1/82 to 9/30/83 tax year. On August 27, 1985, the Internal Revenue Service filed a "Notice of Federal Tax Lien under Internal Revenue Laws" against Little and his wife, for unpaid taxes for the 1977, 1978, and 1981 tax years. The present dispute focuses largely upon this tax lien and the government's rights and efforts to redeem the property to which the lien attached.

On December 27, 1985, all of these mortgages were in default. On that date, Purdy, first mortgagee, sent notice to the United States of foreclosure by non-judicial sale of the first mortgage. This notice was sent in compliance with 26 U.S.C. § 7425(c), and on January 3, 1986, the United States acknowledged receipt of the notice. On January 31, 1986, the Purdy mortgage was properly foreclosed. Purdy was the pur-

chaser of the property at the sale, bidding $33,916.26, the amount due to him under the terms of the mortgage.

Subsequently, on February 13, 1986, Cordie Thrasher, the holder of the third mortgage, purchased the second mortgage on the property from the assignee of Central Bank. On February 25, 1986, Thrasher paid to Purdy $33,916.26 plus ten (10) per cent interest from January 31, 1986, and in return, received and recorded a redemption deed for the property. On that same day, Thrasher delivered a warranty deed to the property to Larry Don Little. Earlier that day Larry Don Little had obtained a mortgage loan in the amount of $110,000.00 from the Peoples Bank of Collinsville, Alabama, to be used as partial payment of the purchase price. As a part of these interrelated transactions, $3,935.91 was placed in escrow to be used to redeem the property from the 1984 state tax sale. The property was subsequently so redeemed from the state.

On October 30, 1986, Larry Don Little sold the property to Loeda Black, plaintiff in this action, for $122,225.05. Of this amount, $120,716.65 was paid to the Peoples Bank in satisfaction of its mortgage. Additionally, $1,508.40 was placed in escrow for payment of 10/1/85—9/30/86 ad valorem taxes, which amount was later paid to the Tax Collector of DeKalb County.

Several months after Black acquired the property, the United States began redemption proceedings to enforce its 1985 tax lien. The government began these proceedings by contacting plaintiff on January 29, 1987, and offering her $36,064.60 for the property. This amount represented the $33,916.26 paid by Purdy at the foreclosure sale plus six (6) per cent interest. Black, who had paid $122,225.05 for the property, refused this offer. On that same date, the United States revenue officer who had con-

---

**1.** Stipulation (5) of the Agreed Summary contained in the court's pre-trial order of September 9, 1987, refers to "the note and mortgage described in number 3 above" but is taken to mean the note and mortgage described in number 4. Stipulation (7) refers to "the assignment described in number 4 above"; the court takes this to mean the assignment described in number 5. Stipulation (24) refers to activities occurring on February 25, 1987. The court takes the correct date to be February 25, 1986, as indicated by Exhibit 14 to the pre-trial order.

tacted plaintiff left the refused check with the Internal Revenue Service in Birmingham, and filed what is styled a "Certificate of Redemption of Real Property by United States" with the Probate Judge of DeKalb County, Alabama. This so-called "Certificate of Redemption" does not recite that the redemption price was paid to Black and receipted by her because such would have been untrue. No additional steps were taken by the United States in its attempt to redeem the property.

On March 18, 1987, Black filed suit against the United States in this court and also filed a Notice of Lis Pendens in the DeKalb County Probate Judge's office. On that same day, after receiving actual notice of the pending suit, defendants John and Connie Rynd, through an agent, offered $66,000.00 to the United States for the property. The Rynds' offer was accepted, and the United States gave them a quitclaim deed. Thereafter, the tax liability of Jimmy Dale Little was credited with the net proceeds of the sale of the property to the Rynds.

### Conclusions of Law

■ The statutory framework under which the United States asserts its right to redeem this property is provided by 26 U.S. C. § 7425(b)—(d) and 28 U.S.C. § 2410(c), (d). These statutes were clearly written with the intent that they be construed in conjunction with state law, and *not* as creating a scheme separate and apart from that of the state. This intent is made clear by the structure of the statutes themselves, by the federal regulations promulgated in accordance with them, and by case law.

The United States Code and the Code of Federal Regulations both make constant reference to state law in setting out the rights of the United States to redeem property on which it has a tax lien and in describing the procedures to be followed in accomplishing that end. For example, 26 U.S.C. § 7425(b)(2), in regard to the discharge of tax liens, states that in sales other than judicial sales, where the United States is not joined as a party, the sale "shall have the same effect with respect to the discharge or divestment of such lien or such title of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated," provided that notice of the sale has been properly given to the Secretary. Section 7425(d)(1) goes on to provide that the Secretary may redeem such property within 120 days after the sale of property on which the United States has a tax lien or within "the period allowable for redemption under local law, whichever is longer."

The amount to be paid by the United States when it redeems such property is governed by 28 U.S.C. § 2410(d). In detailing the requirements of § 2410(d), 26 C.F. R. 400.5–1(c)(2) (1987) makes clear that this amount will vary from state to state depending on state law regarding, *inter alia*, the availability of deficiency judgments following foreclosure. The examples provided in § 400.5–1(c)(2) indicate that in a state where a mortgage obligation is fully satisfied as a result of a foreclosure sale and the mortgagee cannot obtain a deficiency judgment, the United States must pay the full amount of the mortgage obligation to redeem, regardless of the amount paid at the foreclosure sale. (Example 1). On the other hand, Example (2) indicates that in a state where, upon foreclosure, a mortgage obligation is legally satisfied to the extent of the fair market value of the property foreclosed, the United States must pay the fair market value of the property regardless of the foreclosure sale price or the total amount of the mortgage obligation. Finally, Example (3) indicates that in a state where a mortgagee has the right to sue for a full deficiency judgment for any amounts owed above the foreclosure sale price, the United States need only pay the foreclosure sale price in order to redeem. Further adjustment of the redemption prices in each of these examples would be required by § 400.5–1(c), but the examples explicitly demonstrate that the amount due in order to redeem is to be determined with reference to state law.

Additionally, in discussing the procedure to be followed by the United States in

774

obtaining a certificate of redemption of real property, both 26 U.S.C. § 7425(d)(3) and 26 C.F.R. § 301.7425–4(C) (1987) require that the "Secretary or his delegate shall apply to the officer designated by local law, if any, for the documents necessary to evidence the fact of redemption. . . ." Clearly, the Code and regulations contemplate that state law will be referenced at every turn when the United States attempts to redeem property upon which it has a tax lien.

The courts have recognized this need for making federal law, in the area of real property, work harmoniously with state law and not in opposition to it. As the Supreme Court has stated in discussing federal tax liens and redemption procedures, "the need for uniformity . . . is outweighed by the severe dislocation to local property relationships which would result from our disregarding state procedures." *United States v. Brosnan,* 363 U.S. 237, 242, 80 S.Ct. 1108, 1111, 4 L.Ed.2d 1192 (1960). In discussing 28 U.S.C. § 2410 and its predecessors, the Court went on to say:

These statutes on their face evidence no intent to exclude otherwise available state procedures. Their only apparent purpose is to lift the bar of sovereign immunity which had theretofore been considered to work a particular injustice on private lienors.

363 U.S. at 246, 80 S.Ct. at 1114.

It is clear, then, that the issue of whether the United States effectively redeemed the property must be determined with an eye to state law. And under Alabama law, the government was "a day late and a dollar short."

■ Alabama Code § 6–5–230 (1975) gives a right to redeem real property which has been foreclosed upon to certain named parties for a period of one year following foreclosure. But this statute must be read *in pari materia* with Alabama Code § 6–5–231, which further qualifies this right to redeem, as the Alabama Supreme Court has pointed out in *Bland v. Hunter,* 448 So.2d 330 (1984). Section 6–5–231 provides:

(a) The priority of the rights of the several persons or parties mentioned in

§ 6–5–230 to redeem shall be in the order in which they are mentioned therein; but any person or party who is entitled to redeem may give notice of his intention to redeem to those having prior rights to redeem; and if such persons to whom notice is thus given do not redeem or commence an action to redeem within 60 days after the service of such notice, then the party giving the notice may, within 30 days thereafter, exercise his right to redeem by an action or otherwise, and no further redemption by the parties so notified may be made.

\* \* \* \* \* \*

(c) Where no redemption is made as provided in this section within six months from the day of sale, anyone entitled to redeem may do so thereafter without giving the notice provided for in this section, and the property may not be again redeemed from said redemptioner.

Implicit within this statutory scheme is the idea that the right to redeem is to be exercised by the party who has the most senior claim against the property and wishes to so redeem, and *only* by that party. Absent some unusual circumstances not here present, the statutes clearly do not contemplate that a junior party may redeem from a senior party who has already redeemed the property. If the statutes were intended to permit redemption from a redemptioner, there would be no need for prioritizing; nor would the notice requirement be necessary, and the legislature's specification that the property may not be again redeemed from a party redeeming more than six months after the date of foreclosure, would have the effect of placing more junior parties in a position superior to that of those with more senior claims.

Alabama case law further confirms that there is to be no redemption from a redemptioner. *Allison v. Cody,* 206 Ala. 88, 89, 89 So. 238, 239 (1921), expressly holds:

Our statutory system of redemption, creating and alone defining the right, the privilege to redeem, does not confer upon one junior mortgagee the right to redeem from another junior mortgagee who has exercised the statutory right to redeem.

Certain named parties, specifically, "the debtor's wife, widow, children, heirs or devisees," *are* authorized to redeem from a redemptioner under Alabama Code § 6–5–232 (1975). However, this provision is more in the nature of protective legislation for the family, and does not otherwise affect the priorities set up in § 6–5–230. The Alabama courts have so held. *See Long v. King,* 233 Ala. 379, 171 So. 738 (1936). That statute has no application here.

■ The government does not contend that its lien was senior to that of the second mortgagee, Thrasher, who redeemed the property after foreclosure. Accordingly, under Alabama law, the government's right to redeem, which was that of a more junior lienor, was effectively cut off by Thrasher's redemption of the property in February, 1986, one month after foreclosure.

Federal law allows the government to redeem within 120 days or the period allowed by state law, whichever is longer. Since the period allowed by state law in this case was terminated after approximately 30 days, the government had 120 days within which to redeem the property. This it did not do. Accordingly, the court concludes that the United States failed to redeem the property in a timely manner.

■ Additionally, the government failed to tender to plaintiff the proper amount of money required for redemption. As previously mentioned, 26 C.F.R. § 400.5–1(c)(2) makes clear that the amount to be paid is to be determined in conjunction with local law, a conclusion that is further borne out by numerous cases. *See Equity Mortgage Corporation v. Loftus,* 504 F.2d 1071, 1075 (4th Cir.1974) ("Section 2410(d)(1) prescribes a shifting quantum of redemption price depending upon the state in which it is applied...."); *Bonan v. Talandis,* 108 Misc.2d 298, 437 N.Y.S.2d 487 (Sup.Ct.1980) (noting that it was conceded that "state law determines the amount to be paid by the Government upon redemption when the purchaser of the property is the foreclosing lienor").

Alabama Code § 6–5–235 (1975) prescribes the amount which must be tendered in order to redeem:

Anyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his vendee the purchase money, with interest at the rate of 10 per cent per annum thereon, and all other lawful charges, with legal interest, which are:

\* \* \* \* \* \*

(2) Taxes paid or assessed.

(3) Any other valid lien or incumbrance paid or owned by such purchaser or his vendee, or any mortgagee of the purchaser, to the extent of the amount necessary to redeem.

\* \* \* \* \* \*

(5) ... a party redeeming must pay all mortgages made by the purchaser or his vendee on the land to the extent of the amount required to redeem the property....

The Alabama courts have construed this statute to require tender of amounts paid for taxes coming due *after* foreclosure, as well as those due or delinquent at foreclosure, *Malone v. Nelson,* 232 Ala. 243, 167 So. 714 (1936). Similarly, the amount tendered must include amounts due on other junior mortgages owned by the purchaser, whether or not owned at the time of foreclosure. *St. Clair Industries, Inc. v. Harmon's Pipe & Fitting Company,* 282 Ala. 466, 213 So.2d 201 (1968). Without trying to make a determination of the exact amount which state law would require, it is clear to this court that the United States offered plaintiff far too little.

Even apart from requirements of state law, the amount tendered by the government is inadequate. 28 U.S.C. § 2410(d)(3) indicates that the amount to be paid includes "the amount (if any) equal to the excess of (A) the expenses necessarily incurred in connection with such property, over (B) the income from such property plus (to the extent such property is used by the purchaser) a reasonable rental value of such property." These "necessary expenses" have been held to include amounts

paid to prevent destruction of title including amounts paid to senior lienors. *Equity Mortgage Corporation v. Loftus.* Further, 26 C.F.R. § 301.7425–4(b)(3)(i) explains that expenses "necessarily incurred" include, among other things, "legal fees incurred after the foreclosure sale and prior to redemption in defending the title acquired through the foreclosure sale, and a proportionate amount of casualty insurance premiums and ad valorem taxes."

■ Even more important in determining the amount the government must pay to redeem is the sense, implicit in the federal regulations, that the government should not be allowed to obtain a bargain at an innocent party's expense. The previously cited examples from 26 C.F.R. 400.5–1(c)(2) evince an intent that the government leave a party from whom property is being redeemed in no worse a position than that in which he found himself prior to redemption. This intent becomes clear when the examples set forth in the regulations are examined as a whole. If, under state law, a foreclosing mortgagee may sue for the full amount of the remaining obligation after foreclosure, the government need only pay the amount bid at the foreclosure sale. The mortgagee will thus have recouped the amount expended at the foreclosure sale and will still have the opportunity to recover additional amounts due to him from the mortgagor. But if a mortgagee has no right to a deficiency judgment and must look to the property alone for satisfaction of the underlying obligation, the government must pay the full amount of that obligation. In the third case, where state law allows suit for deficiency, but only to the extent that the obligation exceeds the fair market value of the property, the government must pay an amount equivalent to the property's fair market value. In each of these instances, the amount which the government must pay is that amount which will leave the purchaser in very nearly the same position as he or she was in prior to redemption. When judged according to this principle, the government's tender to plaintiff in this case of $36,064.60, for property for which she legitimately paid $122,225.00, is so woefully inadequate as to be unconscionable.

■ Finally, the government did not comply with the procedural requirements set forth in 26 U.S.C. § 7425(d)(3)(A) and 26 C.F.R. § 301.7425–4(c)(1) (1987) regarding the certificate of redemption. Both the Code and the regulations require that the Secretary or his delegate apply to the officer "designated by local law, if any, for the documents necessary to evidence the fact of redemption and to record title to [the] property in the name of the United States." This requirement is emphasized in 26 C.F.R. § 400.5–1(d)(1) (1987) as well.

The Alabama Code explicitly addresses the situation presented when an individual refuses to reconvey property to one who is entitled to redeem it. Alabama Code § 6–5–237 (1975) provides that in such a situation "... such party so paying or tendering payment shall thereupon have the right to file in the circuit court having jurisdiction thereof a complaint to enforce his rights of redemption." No such procedure was followed by the government in this case. Rather, the United States simply filed what it euphemistically described as a "Certificate of Redemption of Real Property by United States" with the DeKalb County Probate Judge on the same day that plaintiff refused its tender. While this procedure is authorized by the federal regulations when redemption procedures are *not* prescribed by local law, it has no application when the state legislature has specifically addressed the issue of the proper procedures to be followed. Hence, in this case, the government's attempt to redeem was procedurally defective, in addition to being improper in other respects.

If this court should be incorrect in concluding that the United States is bound by state law as to the procedure for effecting redemption, the court points out that the Alabama procedure is designed to protect the would-be redemptioner in cases where there is a dispute over the proper redemption amount. In the present case, instead of invoking the Alabama procedure, the United States took the risk of guessing incorrectly the redemption amount. When it guessed wrong, even by as much as one penny, and allowed both the 120–day and the one-year redemption periods to expire, it kissed its lien goodbye.

It is clear, then, that the attempted redemption by the United States on January 29, 1987, was ineffective. When Alabama law and federal law are viewed in conjunction, as they must be in an attempted redemption of real property by the government, it is evident that the government's efforts came too late, that the amount tendered was too little, and that the procedures followed were inadequate. The government did not obtain title to the property through its purported redemption, and therefore had no title to convey to defendants John and Connie Rynd. There is no claim that the Rynds somehow obtained a better title than that which the government had to convey. Accordingly, the court concludes that legal title to the property in question was held by plaintiff Loeda Black prior to the government's attempted redemption and continues to be held by plaintiff.

A separate order implementing the provisions of this memorandum opinion will be entered contemporaneously herewith.